I'm William Mattingly. I represent the petitioner in this case, the insurance carrier, BrickStreet Mutual Insurance Company. Two issues the director has agreed with that are different from what the agency decided that I think we can just get off the table right away. One is that the deposition of Dr. Schrader is testimonial evidence, not documentary evidence. And you need to look at the regulations that deal with that. The second is that Dr. Schrader's opinion that there is advanced pneumoconiosis with interstitial fibrosis, that was the note that he wrote that was admitted early on in the case before the district director, does show in combination with his deposition, unlike the ALJ found, that there was complicated pneumoconiosis before BrickStreet's coverage began. Did you appeal that? The ALJ and the, I know what the government says about it, but the sort of alternative holding by the ALJ and the BIA that even if you consider the Schrader deposition, there's insufficient documentation of an onset date before Backstreet coverage started. I didn't see you appeal that holding. It was raised before the Benefits Review Board and at the ALJ. Right, but not before us. It was included in the brief discussed, I'll go back and in rebuttal tell you where exactly. Yeah. I didn't frame it. I don't think it's a separate issue. It's one of the subsections later on in the brief. Okay. But there are two items I'd like to discuss this morning. The first is, was it error for the ALJ to reverse his receipt of evidence at the hearing when he issued his decision? And the corollary issue, what do we do about extraordinary cause to have evidence received? And the second is, is a physician's diagnosis of complicated pneumoconiosis liability evidence or medical evidence, or is it medical evidence that has a legal implication on liability? And it's that third option that I think it really is. Let me dispose of the hearing evidence first because I think that's the easiest to get our heads around. The ALJ held the hearing. I offered the deposition of Dr. Schrader, the treating physician. The director didn't object. No one else objected. It wasn't done in a vacuum. Prior to taking the deposition, a subpoena had to be obtained. The parties knew that. I noticed the deposition issue. The deposition was held. The deposition was exchanged 20 days before the hearing. It was put in the pre-hearing report. I intend to offer this evidence of Dr. Schrader. The director didn't show up at the hearing. When I went back to look at the rules of procedure for black lung claims, there's no specific rule that says you only receive evidence and argument at the hearings. You have to imply that from 725.455 and 725.461. Those two sections work in combination for what I think is a common sense rule, that if you make a ruling at a hearing, that's the ruling that continues on in the case unless there's specific notice somewhere before that ruling becomes changed to put the parties on notice. That goes into pretty much basic concepts of fair notice and a chance to respond. And how was that notice timely? That's a different question. Okay, that's my question. Okay. The notice of taking Dr. Thacker's deposition. Dr. Schrader's deposition. I'm sorry, Dr. Schrader's deposition was not given to the district attorney. My grandfather was a doctor, so maybe he didn't. They did not counsel for Brick Street at that time in the case. I came in later. They did not identify Dr. Schrader before the district director specifically as a liability witness. So isn't that what's required, though, by the regulations? It is required, but you can show extraordinary cause. Okay, and where did your client show extraordinary cause? I didn't and my client didn't because, as we said at the hearing, the judge said I received that evidence. I know this is off the record, but were you just about to answer my question? What was the extraordinary cause? I was prepared to have the claimant testify. I was prepared to explain to the ALG that there were no rules of procedure that allowed me to take depositions or subpoena witnesses when it was pending before the Office of Administrative Law Judges. Those discovery requests for interrogatories, requests for admissions, only exist before the Office of Administrative Law Judges because there's no judge to supervise the discovery procedures or rule on objections. Well, after the director did object to the admission of that evidence following the hearing, did you seek to explain the extraordinary circumstances then? No, because in my opinion the hearing – But you said you were prepared to at the hearing had they objected. So when they did object, if you were prepared, why didn't you explain? In retrospect, maybe I should have, but I was at the hearing. The evidence was received. Was the director at the hearing? No, they opted not to come. That was water over the dam. I didn't think we had to go back and retread that water. Are you saying that they – I mean, they did object afterwards. Were they permitted to object afterwards or was that wrong? I would suggest not, because when evidence is tendered at the hearing, the parties are there with an opportunity to object. 725-461 says if you don't show up at the hearing, you waive the right to present evidence, and I think you also waive the right to object to evidence. But isn't there restriction on considering evidence? I mean, isn't it mandatory that you can't consider this evidence if there hasn't been the proper notice? It's – the testimony can't be considered unless there's extraordinary cause if it deals with liability. And there's the next wrinkle in this, because you have to go to 725-457. I'm sorry. Just before we move on. Okay. What was the extraordinary circumstance? I didn't really understand what you were saying. What prevented you from giving notice that you would like to rely on the Schrader deposition in order to – or rely on Dr. Schrader, period, in order to contest liability? In a perfect world, that would have been included in the response. So there was no extraordinary circumstance? No, no. You couldn't compel his deposition. I understand that, but you couldn't just give – the question is notice. Why didn't you say, look, we're going to be contesting liability, and we're going to be doing it with this Dr. Schrader guy? The other part of the extraordinary circumstance is the very language in the schedule for submission of additional evidence, Joint Appendix, page 53, which talks about evidence that is already in the record can be considered. And so that evidence was already in the record. All we wanted to do was to take his testimony and to explain it. That's an argument for maybe – I just think maybe we're talking past each other. I do understand your arguments for why you weren't required to provide notice. But assuming that you were, and so there needed to be some extraordinary circumstance, I don't understand what the extraordinary circumstance was that would have prevented you from providing that notice. I don't know that there is an extraordinary circumstance, but it's extraordinary – well, you have to show extraordinary cause. At that point, both coverage of the insured and the insured were being represented by one law firm. When I got involved later on, I represented the insurance company on the coverage issue. That's a circumstance that I think the other firm would have been prohibited from taking certain testimony that may have changed coverage issues that they really weren't allowed to enter into, those kinds of considerations. But that was something I was prepared to argue at the hearing before the I didn't raise it when I saw it in the director's brief. Maybe I should have. But I thought that that ruling had already been made, and I was relying on the published board case law of Preston v. Amherst Coal Company, which said if you have a hearing and you receive evidence, but you change that because you go back and review the mandatory regulations, you have to put the parties on notice there's been a change. So I was waiting for the judge to give me that notice. Hey, the director's raised an objection. I want you to respond, or I'm going to strike this evidence. You did respond, right? Am I misremembering? I thought you did respond. I did, but I did not address the cause issue. But you did respond, so the issue was briefed before the ALJ. But the Preston issue was never addressed by the administrative law judge nor the Benefits Review Board when I asked them to apply their own en banc decision, which deals with receipt of evidence and how judges are supposed to respond. But was there any prejudice by the failure to follow the Preston thing, given that the issue was briefed, that everyone had an opportunity to brief the issue and to raise extraordinary cause? No, there was prejudice. I did not have the opportunity to know the evidence was not going to be received and then to plead extraordinary cause. But you did have an opportunity to plead extraordinary cause. The director objected and said, I'm not letting this evidence in. You shouldn't let this evidence in under this regulation. The standard's right there, extraordinary cause. You responded. You filed a brief. You argued the point. I just don't understand why you didn't have an opportunity to raise all of your arguments in that brief. But the evidence had already been received. And the objection was untimely. It should have been made at the hearing. You had an opportunity to brief the issue, right? You chose not to brief certain things. Yes. Okay. The other thing to consider in this case is the implication of 725.457, which deals with testimony of witnesses. And there, the first sentence says, in the case of a physician offering testimony relevant to the physical condition of the minor, he must have prepared a medical report. That's the only limitation. The director references 65 Federal Register, and on page 9 of their brief, and if you'll look at page 80,000, it explains in the comments the background for this section and says, for the testimony of a medical witness, there are only two factors to be considered. Whether there's a medical report that's been submitted, which there was in this case, and two, was there notice given for him to appear at the hearing, 10 days' notice, or by deposition, 30 days' notice? And that was given here. So that was complied with for the testimony of Dr. Schrader, according to the regulations. So the regulations are subcontradictory. And here's the real problem with this case. You have a physician who's offering medical testimony that has legal implications. And those legal implications we've all known since 1980, the Third Circuit Truick decision. And in that case, the director tried to prevent the employer from using the so-called irrebuttable presumption when there was complicated pneumoconiosis that arose at a prior employer. The Benefits Review Board said that's incorrect. The director changed theories before the thirds could, and knocked down an aggravation theory. So the director's been aware all along that potential complicated pneumoconiosis can have a legal ramification. The reason you have to respond to the district director's request early on in the claim are for those employment questions that the employer knows. But whether or not the employee has complicated pneumoconiosis is outside the realm of the employer's knowledge. So it makes no sense, nor is there any affirmative duty in the regulations for my client to plead that there is complicated pneumoconiosis. Rather, this is an interaction of a medical diagnosis with a legal implication when the irrebuttable presumption is invoked. And that is the problem in this case. It shows that this gentleman had complicated pneumoconiosis long before Brick Street's coverage. As of when? What do you think the date of establishment of complicated pneumoconiosis is? Dr. Schrader suggested it may have been as early as 2007. For sure it was the fall of 2012. We know that there are X-rays read as complicated pneumoconiosis in January of 2013, which are Category B in size, which is at least 5 centimeters. I'm sorry. I just wanted to answer because your time is up. So your answer is fall of 12? So you think his benefit should start fall of 12? At least fall of 12. Perhaps earlier. At least fall of 12? We'll come back on rebuttal. Good morning. May it please the Court, my name is Anne-Marie Scarpino, and I represent the Director of Office Workers' Compensation Programs at the U.S. Department of Labor. Brick Street is here today asking the Court to excuse it from its obligation to pay this claim based on its failure to follow the Department's regulations. All Brick Street had to do to comply with those regulations was to file a letter with the District Director identifying Dr. Schrader as a liability witness. Brick Street did not do that. Now, opposing counsel argued that the Director could not object to the receipt of that deposition testimony after the hearing. What's your response to that? Our response is that the Director could object to it on the grounds that the deposition can come in for medical purposes of deciding the minor's entitlement. But our objection to the deposition was that the ALJ could not rely on it for liability evidence. But I think, as I understood it, though, he was saying it wasn't a timely objection because it wasn't made at the hearing when the evidence was received by the ALJ, that because the Director wasn't there at the hearing to make the objection, then the objection was not timely. That was my understanding. So what's your response to that? Our position is that the objection is timely. Even though the Director wasn't at the hearing, the case was still before the ALJ. The ALJ had not made any decision regarding that evidence. As a matter of fact, the day after the hearing, the ALJ issued a briefing order specifically asking the parties to address the issue of Brick Street's liability. And the solicitor did that, and Brick Street responded and did not raise the issue of extraordinary circumstances as Mr. Mattingly has conceded. But you didn't object to the depositions. Don't you take the risk that even though it may be for entitlement, but the medical testimony given there might also have, as counsel says, implications that have some direct bearing on liability? For example, timing and the existence of complicated pneumoconiosis, right? That is correct, Your Honor, but we did not object to the receipt of the deposition per se because we recognized that it could be admitted for entitlement purposes. We objected to any use of the deposition for liability reasons. This Court has recognized in Weiss that medical evidence can also have implications for liability, but unless that medical evidence is presented to the district director, then an employer is precluded or any party is precluded from relying on it as liability evidence after the case is referred to the Office of Administrative Law Judges. But there was notice of the deposition, right? I'm sorry? There was notice of the deposition, correct? That is correct. There was notice of the deposition. And you were present at the deposition? No. Nobody was present? No. You didn't even come there. The solicitor was not present at the deposition. We had no notice that the employer had intended this to be a liability witness. So are we just to ignore it because you didn't say may I? It's like Simon says. The point that we're trying to get is that if what is relayed is bills over and has an impact on liability, we should just ignore that? Because the testimony in the deposition said he did have complicated pneumoconiosis, right? That is correct. Right? Nobody is disputing that he did have pneumoconiosis. So the question is when the onset of that was, correct? Is that a problem? That's the problem? The onset goes towards entitlement as well as liability in this case. Exactly. So, therefore, the deposition itself, how did you just split a line? Well, you didn't. If the deposition is admitted, why not admit it for whatever value that it has? Because it can't be admitted for that liability purposes. Because the regulations make very clear that unless a witness is identified before the district director, that no witness testimony relevant to liability can be admitted and considered. But you knew about the doctor, right? And that was all that was required. It's not like Rule 26 type discovery. It's just the name, right? That's all, basically. You don't have to give every deed, right? I'm sorry, in front of the district directors. Right. Well, you have to read what was required. Did you know the name of the physician? We knew the name of the physician and the address of the physician, but still have to be identified as a liability witness. We have no way of knowing from the name and the address whether or not any party in this case is going to rely on that particular witness as a liability witness. So the identification is not just simply the name and address, but you have to give some indication to the district director that this person is a liability witness. Because if you don't, then the district director has no way of knowing that you're going to rely on this person as a liability witness and does not have the opportunity to investigate. Investigate what? Investigate liability while the case is pending before the district director. The regulations contemplate that liability, when the district director names a receivable operator and an insurer, district director has one shot at it. That's why the regulations are geared towards making sure that all of the liability evidence, the identification of liability witnesses as well as documentary evidence, are presented to the district director. Because if it is not, and the district director makes a mistake or does not have all of the evidence that he or she needs, the trust fund eventually, if the employer is dismissed as the responsible employer or here as the liable insurer, the trust fund must assume liability of the case. That's right. So by not presenting that evidence to the district director, the party's prejudiced the district director and the trust fund. So you had a one-day opportunity here, right? One day. One day. One day for? In terms of their liability, potentially, this insurance company. Yes, they took over on the 13th and the minor retired on the 14th. And the doctor said that he had complicated pneumoconiosis when? As of what date? Dr. Schrader did not give a particular date. In his deposition testimony, which we are contending, cannot be considered at this point for liability. He suggested that it could have been as early as October or November. However, the ALJ did not make a specific finding regarding that portion of the testimony. See, I disagree with that. I think I don't understand the alternate holding. I didn't really understand the government's objection. The government says the ALJ didn't address the part of the deposition where Dr. Schrader says it could have been as early as fall 2012. But I think, as the board explains, what the ALJ said was that that opinion was not sufficiently documented to establish an earlier date for onset of CP and that the problem was that Dr. Schrader couldn't say that the 2007 X-ray, on which he relied for his prescription pad diagnosis, that that X-ray itself established complicated pneumoconiosis, and that without that the X-ray is not in the record. His notes from that X-ray aren't in the record. And without that, there's just nothing where you can pinpoint an earlier date, and it's not enough. They get that his expert opinion is that, well, if he had it in January 2013, it's most likely he also had it in the fall of 2012. But that's not the kind of diagnosis that the regulations call for. That's correct, Your Honor. Well, then why is that not absolutely correct? That seems right to me. It's certainly supported by substantial evidence. Yes. You are correct that the ALJ said that the doctor's reliance on the 2007 X-ray was not enough evidence to show. But the problem is that the doctor couldn't say in his deposition, which I read, that that 2000 X-ray shows complicated pneumoconiosis. If the doctor had testified that, a whole different ballgame, the ALJ and the BIA say. But the doctor wouldn't say that. All he would say is, well, reasoning backwards from this January date, I'm coming up with something in the ballpark of fall 2012. And I don't know how you're supposed to start benefits flowing roughly fall 2012. I mean, the ALJ said benefits start on January 2013, because that's the first X-ray that establishes the onset of complicated pneumoconiosis. I think if all of this is wrong, we're going to have to reopen when the benefits start as well, right? If the government's position or Brick Street's position is that the ALJ and the BIA were wrong about this, then they were also wrong in starting benefits in January 2013, right? Correct. Okay. And the last day he was covered by the insurance companies, what? It would be his last day when he retired on December 14th. Right. December 14th. Yes. Right. 2012. Right. And so no one can say on that date he had it, correct? Complicated. That is correct. Right. But they can say what date we know he had it. Correct. The X-ray. What date is that? It was January 13th. I'm sorry. I think it was January 15th. And how many days after he left? It was about a month after he left. So one month. That's like saying a doctor found that there was calcification in the bone 30 days after he left, and you couldn't conclude that 30 days ago he had this condition. Isn't that against any kind of common sense? How would you have that level? You know, you have it 30 days after you leave, but then that's not – I mean, is there some things almost like common sense? Well, it could be common sense, Your Honor, but you would have to have a medical doctor who gave an explanation as to why that happened. Complicated pneumoconiosis is diagnosed by X-ray or by autopsy or biopsy. In 2007, what did the X-ray say? We don't know because that X-ray is not in evidence. Right. And, I mean, the BIA absolutely considers the common sense argument, and it just says we need medical evidence. We don't do common sense. We need a date when there's a diagnosis. And, I mean, we could say that from now on the BIA has to build in a 30-day buffer zone around a diagnosis and assume on the day it was diagnosed common sense would tell you 30 days ago you had it, but that's not how they do business now, and I don't see where the warrant for that is in the regulations, which require an actual diagnosis. That is correct, Your Honor. And so you actually – complicated pneumoconiosis occurs on a certain date? I mean, is there any doctor that really could say that? They probably – you know, Your Honor, I'm not a physician, but I know that in terms of – But, I mean, can you imagine under oath saying, no, I can tell you for certain it happened on February the 1st? It's impossible. But they don't ask for the date on which you had it. Is that correct, counsel? They can only tell you when – the diagnosis can only be made when the X-ray shows, and you can say that as of this date we know that the minor had complicated pneumoconiosis because that's the date the X-ray showed that the opacities in his lungs were larger than one centimeter, which is the requirement under the regulations. Right. The relevant date is the date on which it was established. That's the date when the benefits start and the date to which you peg this liability, the date on which it was established, not actually the date on which you could reason backwards he actually had it. That's why the benefits don't start until January 2013, even though common sense might tell you he probably had it a little bit before that day. That's correct. I see that my time is up unless the Court has any other questions for me. Thank you. Thank you. Mr. Austin. Thank you, Chief Judge. It's my honor to be here today, and may it please the Court. I'm Brad Austin. I represent the claimant in this case, Mr. Mark Van Dyke. 2,206 days have passed since my client filed an application for federal black lung benefits. A notice of claim was sent to Brick Street. It did not contest liability. A schedule for submission of additional evidence was sent to Brick Street. It did not contest liability. A proposed decision and order of benefits was sent to Brick Street. It did not contest liability. As the administrative law judge stated, it wasn't until 16 months after this claim was filed, after a proposed decision and order had been issued, that Brick Street began to contest liability. I also think it's important to note that after the proposed decision and order award of benefits, the employer, in this case Paramount Coal, continued to contest the merits of this claim. So as this case was forwarded to the Office of Administrative Law Judges as claimant's counsel, I was still developing my case, because they had not conceded the presence of complicated pneumoconiosis at that point in time. The director, Ms. Scarpino, has properly pointed out the case law. Liability evidence must be submitted to the district director. The carrier's counsel has supplied this court with absolutely no explanation why a simple letter that states, we intend to submit evidence of liability, at some point, could not have been drafted. It was not drafted, Your Honors. And in fact, if you look to page 102 of the joint appendix, the letter that the carrier finally did draft still did not state what witnesses could be called to contest liability. So even if Dr. Schrader's deposition, as Judge Harris stated, even if Dr. Schrader's deposition is admitted in this case, it still does not establish, affirmatively, when complicated pneumoconiosis would have been diagnosed and whether or not Brick Street had coverage. That is a substantial evidence consideration that this court should affirm based on the ALJ's findings. The case law is quite clear on that. Also, the regulations are quite clear on that. They did not submit the evidence before the district director. My client, Mark Van Dyke, has the most deadly form of coal worker's pneumoconiosis, progressive massive fibrosis. He's had a double lung transplant because of this condition. This condition occurs as a direct result of his occupational exposure to coal and rock dust while employed in the nation's coal mines. The carrier in this case failed to contest liability at the district director level, delaying this case even beyond the Office of Administrative Law Judge level. The coal company, in this case, Paramount, continued to contest the merits of this claim up until the day of the hearing when it submitted absolutely no evidence contrary to the evidence that I had developed the whole time. 2,206 days have since passed, and here we are before Your Honors. Please, Your Honors, hold Brick Street liable and put this case to rest so that my client can have finality. Thank you. I would address any questions that this court may have at this time for me. Thank you. Thank you, Your Honor. Mr. Mattingly, it seems like they say that it's not about common sense or anything like that, or science, but it's about how Congress writes things, and so you have to say, Simon says, and they say you didn't. Well, let me ask you a question. But answer that question in terms of is it true that you just did not do that? No, it's not true. It's true that my client, the insurance company, never submitted that letter. That is true. Was the director on notice? They were because 725.414B. But you're required to submit that letter unless you have an extraordinary circumstance, and I thought I didn't hear any extraordinary circumstance explanation in your opening. But that's a battle to fight in front of the agency and the ALJ. And you did. Did you fight that in front of the agency? I didn't, and I explained why we didn't. You just said it was a battle to fight there, so if you didn't fight it there, what can we do? I was under the impression the evidence had been received, and the way I read Preston, and I think any fairness of a hearing. But you responded to their objection. Which was untimely. Right, but you responded to it. Why didn't you fight that battle then? I thought the evidence had been received, and it was an untimely objection. You don't fight every possibility when you've won a war. So the director had notice. They had Dr. Schrader's note, and 725.414.b.2 specifically says that any other party may submit evidence regarding the liability of the designated responsible operator. What gave you the impression that you'd won the war on that when they objected after the hearing and the hearing officer specifically asked for further argument on liability? The hearing wasn't closed. The evidence was closed. The evidence portion of the hearing was closed. But the argument hearing wasn't closed because the hearing officer asked for written arguments before rendering the decision. He did, but he had already received the evidence and received it for all purposes. Judge Harris, I did raise I found it in your brief. So can I And I disagree with the way that you've read page 97 of the deposition. No, no. Can I ask you a question? Sure. Let me go first. I mean, you probably do a lot of these cases. Isn't it usually the case that when a minor claims benefits, and so say they come in with an X-ray dated I'm just making up a date, April 2003, that shows pneumoconiosis, it's not customary, right, for either the insurer or the employer to say, eh, common sense says he had it at least a few months ago, so we're going to start the benefits a couple of months before the date on which we get the X-ray diagnosis. It's the date of the diagnosis that counts, right? Not what we can kind of, through common sense, extrapolate might have been the date of onset. Or in this case is the ALJ found the date of application, because he did not credit the testimony of Dr. Schrader in the joint appendix, page 97, which said, I can look at that January 2013 X-ray. It is so bad that I know he had complicated pneumoconiosis in October or November. It's not that he didn't credit, it's that it's not sufficiently, that expert reasoning backwards in time is not sufficiently documented. We need documentation of an onset date. You have a treating physician who is familiar with the patient's condition. So it would be your position that in a case where a minor comes in and has an X-ray that says January 15, 2013, that's the first X-ray that shows pneumoconiosis, but also has a doctor who comes in and says, eh, I'm reasoning backwards three months, common sense tells me that, then that minor would be entitled to benefits from the early period. And it shows this big of a change. I think that's credible physician testimony. So what day do you think this claimant should, what day should his benefits start? Dr. Schrader is sure it should have started in the fall. You can't start benefits in the fall. That's why you usually have an X-ray or a biopsy, because then you have a date. You can't start benefits fall. October of 2012. You're just going to make up October 2012? Because this is the problem. They need an exact date. The doctor has to say to a reasonable degree of medical certainty. They can't get up there and say, oh, just spitball it here. I'm sure the claimant's attorney will be glad to argue common sense when they admit their next set of experts in these cases. And we'll see what the company says to that. And he didn't spitball. He looked at that January 2013 X-ray. He couldn't even date it. That's a spitball. He gave a range. You can't start benefits in a range. That's why the regulations say you're supposed to have either an X-ray or a biopsy or some evidence that this condition would have shown up on an X-ray or a biopsy as of a date. We don't have that in this case. But you have a range. The range would be fall, right? So you'd have to take the one the worst case against you would be December the 21st, something like that? No. He was asked, would he have had complicated pneumoconiosis or progressive massive fibrosis in his lungs by October or November of 2012? His answer was yes. Yes, that's why. And you read all of the deposition. He's been treating him for this condition for a long time. Your client didn't need a specific date as long as the date before you start covering it. As long as it was before December 12th, that was good enough. The specific date you needed is to follow the rules in notifying of your contention of liability. Follow those dates. The liability was not specifically noted for the district director. The liability issued that the medical evidence might raise. The director was aware of it. The evidence had been offered by the claimant. I read the regulations to allow physician testimony on medical issues to be used in any part of the claim. And that would also have the implications of the onset of your rebuttable presumption. All right. Thank you, counsel. We'll come down. First, we'll have the clerk dismiss the court, sign a die, and then we'll come down and greet counsel.
judges: Roger L. Gregory, Stephanie D. Thacker, Pamela A. Harris